Kathleen L. EBY,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4423)

Kevin E. Mayne, Wallace W. Lien P.C., Salem, filed the motion and argued the cause for Plaintiff (taxpayer).

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, filed a response and argued the cause for Defendant (the department).

Decision for Plaintiff rendered October 18, 2000.

## CARL N. BYERS, Judge.

Plaintiff (taxpayer) appeals from a magistrate decision upholding the disqualification of taxpayer's property for special farm-use assessment. The matter was decided in the Magistrate Division on motions for summary judgment and has been submitted to the Regular Division on taxpayer's motion for partial summary judgment. Defendant Department of Revenue (the department) asserts that there are some material facts yet in dispute.

## FACTS

The undisputed facts are: in 1990, taxpayer purchased 9.5 acres of land in Crook County. The property was improved with a 1978 manufactured home, barn, shop, office, three-car garage, and hay shed. The land was zoned exclusive farm use (EFU) and had been receiving special farm-use assessment.

In April 1994, taxpayer transferred title of the 1978 manufactured home to her son, and the son removed the home from the property. On August 13, 1996, taxpayer applied, under Crook County Zoning Ordinances (CCZO), to replace the manufactured home. That application was submitted to the Crook County Planning Department (planning department).[1] By letter dated August 15, 1996, the planning department granted the application, assuming that the 1978 manufactured home was still on the property. Referring to taxpayer's property, it stated:

> "(11) A replacement residence is permitted outright under Section 5.010 (4) of the Crook County Zoning Ordinance."

However, the section referred to requires that a replacement structure "be in actual operating condition within one year" from the date that the original structure was removed.[2] CCZO § 5.010(4).

---

[1] Here, the planning department is the designate of the Crook County governing body.

[2] That provision presumes that the original structure was "destroyed by any cause." CCZO § 5.010(4).

The assessor discovered that taxpayer did not meet the above one-year requirement. Thereafter, the assessor disqualified taxpayer's property from special farm-use assessment under ORS 215.236,[3] and sent taxpayer written notice indicating:

"Under the provisions of ORS 215.236 I am hereby disqualifying your property from farm-use assessment * * *."

Taxpayer appealed the disqualification, first to the department, then to the Magistrate Division, and now to the Regular Division.

## ISSUE

Was the assessor's disqualification of taxpayer's property from special farm-use assessment valid?

## ANALYSIS

Local county and city land-use ordinances are subject to state statute. ORS 215.130(5) indicates that lawful uses at the time an ordinance is adopted may continue even though they may be nonconforming uses. Further, restoration or replacement of a nonconforming use may be permitted when the restoration or replacement is made necessary by fire, casualty, or natural disaster. Any such restoration "shall" commence within one year of the event. ORS 215.130(6). However, any such restored nonconforming use may not be resumed after a period of interruption or abandonment unless the use conforms with valid zoning ordinances. ORS 215.130(7).

Under the above provisions, it appears that the Crook County Planning Commission could not lawfully authorize a replacement dwelling in the absence of evidence that it was made necessary by "fire, casualty, or natural disaster." Further, there was a clear period of interruption beyond the one-year period allowed for replacement. Therefore taxpayer's replacement did not comply with state statute or the county ordinance.

The assessor stated that he disqualified the property from special farm-use assessment under the authority of

---

[3] All references to the Oregon Revised Statutes are to 1995.

ORS 215.236, which is a land-use statute. That statute primarily provides direction to governing bodies and land owners regarding the placement of non-farm-use dwellings within exclusive farm-use zones. While it provides some direction for assessors, those provisions apply only within a very specific set of circumstances.

■　　ORS 215.236 directs the assessor to disqualify property from special farm-use assessment when all of the following events have occurred: (1) the taxpayer "has been tentatively approved" to establish a non-farm-use dwelling, (2) the taxpayer has notified the "assessor that the lot or parcel is no longer being used as farmland," and (3) the taxpayer has requested that property be disqualified from special farm-use assessment. ORS 215.236(6). If those events have not occurred, the assessor has no power to act under ORS 215.236.

It is clear in this case that none of the three conditions set forth in ORS 215.236(6) was present. Taxpayer did not apply for or receive tentative approval of a non-farm-use dwelling, taxpayer did not notify the assessor that the parcel was no longer being used as farmland, and taxpayer did not request that the property be disqualified from special farm-use assessment. Therefore, the assessor here was not authorized to disqualify taxpayer's property under ORS 215.236 from farm-use assessment.

However, ORS 308.397(2) provides:

"Land within an exclusive farm use zone shall be disqualified by:

"(a) Removal of the special assessment by the assessor upon the discovery that the land is no longer being used as farmland * * *."

■　　That statute imposes a duty upon the assessor to disqualify property from special farm-use assessment whenever the assessor discovers that it is not being used exclusively for farm use. If the assessor acts under that statute and disqualifies the property, the assessor must give the property owner notice. ORS 308.399(1) provides, in part:

"[W]hen land which has received special assessment as farm use land under ORS 308.370(1) thereafter becomes

disqualified for such assessment under ORS 308.397, the assessor shall notify the owner thereof and there shall be added to the tax extended against the land on the next general property tax roll * * * an additional tax * * *."

In implementing that statute, the department has adopted OAR 150-308.399(1), which requires that the notice of disqualification to the owner state:

"(a)  That the subject property *has been* disqualified from special farm land assessment;

"(b)  The market value be placed on the assessment roll for the current year; and

"(c)  The additional tax liability that will be imposed, or if the land is not used for another use the amount of the potential additional tax liability." (Emphasis added.)

The notice in this case did not comply with either the statute or the administrative rule. The notice erroneously indicated that the land was *being* disqualified under ORS 215.236, when it should have stated that the land *had been* disqualified under ORS 308.397. That is no small error. In this case, for example, both parties expended considerable effort addressing ORS 215.236 when that statute was not even relevant. Also, the owner needs to understand that the action has been taken, not that it will be taken. Here, the notice indicated that the owner had 20 days to show cause why the action should not be taken. That is not consistent with the statute. By requiring the assessor to disqualify the property first and then give the owner notice of that action, the statute contemplates that the owner will either accept the action or appeal to this court under ORS 305.275. ORS 305.280(1) gives the owner only 90 days to file an appeal. The 90-day appeal period begins running when an owner learns of the disqualification. If the owner is distracted or lulled into inaction in the hope that discussions with the assessor's office will change the outcome, the appeal period may expire before the owner realizes that disqualification is an accomplished fact. If the appeal period expires, the owner is time barred from obtaining any relief.

The notice also did not comply with the administrative rule because it did not contain the market value to be

placed on the roll or the amount of the additional tax liability that will be imposed. Both of those facts constitute vital information for the owner of the property. An owner may agree with the assessor's action of disqualifying the property, but may disagree with the market value estimate placed on the roll or the amount of additional tax calculated or both. If that information is not contained in the notice, the owner is unable to determine whether to appeal on those points. Failure to include that information places the owner on the three-legged stool that is missing two legs.

In light of the above, it is apparent that the notice is a "mandatory" and critical part of the administrative process. *Anaconda Co. v. Dept. of Rev.*, 278 Or 723, 565 P2d 1084 (1977). The notice is for the protection of the owner and an essential element in procedural due process. The court finds that the defects noted are so extensive and important that they render the notice ineffectual. Therefore, a notice compliant with the law must yet be given, and the additional tax can only be extended against the land on the next general property-tax roll *following* that notice. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is granted. Plaintiff is to recover costs.